**FUJITSU TEN CORPORATION OF AMERICA, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Slip Op. 97–11.
Court No. 95–03–00230.**

United States Court of
International Trade.

Jan. 29, 1997.

**246**

Katten Muchin & Zavis, Chicago, IL (Mark S. Zolno, Kathleen M. Murphy, Michael E. Roll, of counsel), for plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States, David M. Cohen, Director Commercial Litigation Branch Civil Division, United States Department of Justice, Rhonda Schnare, Attorney, Commercial Litigation Branch, Dean Pinkert, Attorney–Advisor, Office of the Chief Counsel for Import Administration, Department of Commerce, Washington, DC, for defendant.

## OPINION

WALLACH, Judge:

This matter is before the Court on a motion to dismiss the action made by the government prior to filing its Answer, pursuant to CIT Rules 12(b)(1) and 12(b)(5). The government contends that this Court lacks subject matter jurisdiction over this action, and that the third of Plaintiff's three causes of action fails to state a claim upon which relief can be granted.

## I.  BACKGROUND

Fujitsu Ten Corporation of America ("Fujitsu") imported into the United States from Japan merchandise known as "front ends" or "ETV front ends". Complaint ¶¶ 1, 6, 7.[1] These goods are parts for automobile radios, which are assembled in the United States. Complaint ¶¶ 8, 13, 14. The entries were made between March 21, 1989 and January 7, 1992. Complaint ¶ 37.

When Fujitsu's front ends entered the United States, the Customs Service of the United States ("Customs") suspended liquidation and required the deposit of estimated antidumping duties. Complaint ¶ 9. Customs

---

**1.** Because Defendant's motion is brought under CIT Rule 12(b), the Court must treat the factual allegations in the Complaint as though they are true, for the purpose of deciding this motion. *United States v. Complex Mach. Works Co.,* 937 F.Supp. 943, 944 at ftnt 2 (CIT 1996).

took this action under the purported authority of an antidumping order that applied to tuners from Japan, Treasury Department Order A–588–014 (December 12, 1970). Complaint ¶¶ 9, 11. That antidumping order described the affected goods as follows:

Tuners of the type used in consumer electronic products consist primarily of television receiver tuners and tuners used in radio receivers such as household radios, stereo and high fidelity radio systems, and automobile radios. They are virtually all in modular form, aligned, and ready for simple assembly into the consumer electronic product for which they were designed.

Complaint ¶ 11, quoting Treas. Dept. Order A–588–014. Fujitsu deposited estimated antidumping duties, as required, and many of the entries were liquidated without refunds. Complaint ¶ 16.

On July 22, 1992, Alpine Electronics, Inc., an importer unrelated to Fujitsu, requested a scope ruling from the Department of Commerce ("Commerce") pertaining to Alpine's entries of tuner parts. Complaint ¶ 33.[2] On October 20, 1992, Fujitsu requested a scope ruling from Commerce that its front ends and ETV front ends were not tuners within the meaning of the antidumping order. Complaint ¶ 35. Both before and after filing its request for a scope ruling, Fujitsu filed protests with Customs relating to the assessment of antidumping duties on the subject merchandise. Complaint ¶ 38.

Commerce determined that no formal inquiry was required to act on Fujitsu's scope request, and on January 20, 1995, found that Fujitsu's front ends and ETV front ends were indeed outside the scope of the antidumping order. Complaint ¶ 41.

This litigation involves the entries that were liquidated prior to the date on which Fujitsu sought the scope ruling and which, by operation of law, were not affected by the subsequently-filed scope ruling request. Fu-

jitsu had filed Customs protests as to these entries, and Customs sought Commerce's advice regarding the action it should take on them. On January 4, 1994, Commerce sent a memorandum to Customs advising that the scope ruling—which had not been decided—would not affect entries that had already been liquidated. Complaint Ex. A. Therefore, Commerce "recommend(ed)" that Customs deny the protests regarding entries that had already been liquidated and "hold" a protest regarding entries whose liquidation had been suspended. *Id.* On February 24, 1994, Customs denied the protests relating to the already-liquidated goods. Complaint ¶ 40.

Fujitsu's consolidated Complaint sets forth three causes of action. First, Fujitsu alleges that Customs' liquidation of its entries without refunding estimated antidumping duties was erroneous and contrary to law because the subject merchandise was outside the scope of the antidumping order. Complaint ¶ 16. Second, Fujitsu alleges that Commerce's letter regarding recommending action to Customs on Fujitsu's protests, and Commerce's failure to continue suspension of liquidations pending the outcome of the scope inquiry were arbitrary and capricious, abuses of discretion, and otherwise not in accordance with law. Complaint ¶¶ 43, 44. The Third Cause of Action alleges that Fujitsu should not have been required to deposit antidumping duties because the antidumping order "on its face" did not apply to the front ends and ETV front ends. Complaint ¶ 50.

The United States contends that this Court lacks jurisdiction over each of the three causes of action, and in the alternative that the Third Cause of Action fails to state a claim upon which relief can be granted.

For the reasons that follow, the court grants Defendant's motion and dismisses the complaint with prejudice.

---

**2.** Fujitsu did not brief an argument that liquidation of Fujitsu's entries should have been suspended based on Alpine's scope request. Thus, it waived the issue. Moreover, the Court notes that Fujitsu did not allege that it participated in Alpine's scope review. In any event Alpine's mer-

chandise was different from Fujitsu's. *See* Depot of Commerce: Notice of Scope Rulings, 60 Fed. Reg. 26871 (May 19, 1995)("Alpine Electronics—Tuning element printed circuit boards (PCBs) are outside the scope of the finding.").

## II. DISCUSSION

The government moves to dismiss for lack of jurisdiction. "Once the court's jurisdiction is challenged, plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper." *Playhouse Import & Export, Inc. v. United States*, 18 CIT 41, 43, 843 F.Supp. 716, 718 (1994) (citation omitted). The Court will examine each of Fujitsu's causes of action individually.

### A. Plaintiff's First Cause of Action

■ The gravamen of Fujitsu's First Cause of Action is contained in the following paragraph from the Complaint:

It is claimed that the liquidation of these entries by U.S. Customs without refunds of estimated antidumping duties was erroneous and contrary to law because the imported merchandise was not tuners covered by Treasury Department Order A–588–014.

Complaint ¶ 16. The issue is whether the subject merchandise is "covered" by the antidumping order. In the parlance of antidumping law, that is manifestly a "scope" issue.

In the Trade Agreements Act of 1979, Congress set forth the administrative procedure that a party must follow to challenge a determination by Customs that goods are within the scope of an antidumping order. 19 U.S.C. §§ 1514(b), 1516a(a)(2)(B)(vi). The statute recognizes that Customs makes the initial determination that an existing antidumping order applies to a specific entry of merchandise. 19 U.S.C. § 1514(b). The statute states that such a decision is "final and conclusive" unless it is appealed by petition to Commerce. *Id.* and 19 U.S.C. § 1516a(a)(2)(B)(vi). Only Commerce's final decision on a scope petition is appealable to this court. *Id.*

Section 1514(b) states the initial premise: With respect to determinations made under section 1303 of this title or subtitle IV of this chapter which are reviewable under section 1516a of this title, determinations of the appropriate customs officer are final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action contesting a determi-

nation listed in section 1516a of this title is commenced in the United States Court of International Trade....

19 U.S.C. § 1514(b) (1988). Subtitle IV to which the statute refers contains the antidumping laws at issue here.

Section 1516a cited in the statute is entitled "Judicial review in countervailing duty and antidumping duty proceedings". It contains a list of six "Reviewable determinations". The sixth is relevant here:

(vi) A determination by the administering authority [Commerce] as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order.

19 U.S.C. § 1516a(a)(2)(B)(vi). The subsection describes Fujitsu's complaint precisely. Fujitsu is complaining that its front ends and ETV front ends are not within the "class or kind of merchandise described" in Treasury Order A–588–014.

The essence of the statute is that upon being required to deposit antidumping duties for its entries of front ends and ETV front ends, Fujitsu had recourse to an exclusive remedy, *viz.*, a petition to Commerce. Only after having made such a petition and its rejection could Fujitsu have brought the issue before this Court. Fujitsu, however, failed to take the requisite steps with regard to the subject merchandise. Therefore, the decisions of Customs that Fujitsu's goods are within the scope of the antidumping order, erroneous though they may have been, are final and conclusive as to Fujitsu.

Rather than seeking redress with Commerce, Fujitsu filed protests with Customs. The plain language of sections 1514(b) and 1516a, however, forecloses protest to Customs as a remedy here. In fact, section 1514(a), which delineates the issues that are protestable to Customs, itself excludes the matters described by subsection 1514(b) unambiguously:

*[e]xcept as provided in subsection (b) of this section...* decisions of the appropriate customs officer ... shall be final and conclusive upon all persons ... unless a protest is filed in accordance with this section,

or unless a civil action . . . is commenced in the United States Court of International Trade. . . .

19 U.S.C. § 1514(a) (1988) (emphasis added). Because Fujitsu's protests fall outside · the exclusive statutory categories of protestable matters, they are a nullity. *See Mitsubishi Electronics America, Inc. v. United States,* 44 F.3d 973, 976 (Fed.Cir.1994). As such, they cannot form the basis for this Court's jurisdiction.[3]

Fujitsu's failure to pursue the exclusive administrative remedy for the wrongful assessment of antidumping duties forecloses invoking this Court's jurisdiction for its First Cause of Action. Without a cognizable protest, this Court cannot assert jurisdiction under 28 U.S.C. § 1581(a). Accordingly, the First Cause of Action must be dismissed.

### B. Plaintiff's Second Cause of Action

■ In its Second Cause of Action, Fujitsu attacks Commerce's actions in "recommending" to Customs that it deny the protests relating to entries liquidated prior to Fujitsu's petitioning for a scope determination, and in failing to continue suspension of liquidation pending conclusion of its scope inquiry. Complaint ¶¶ 43, 44. These claims are based on a memorandum from Commerce to Customs, dated January 4, 1994, apparently sent in response to Customs' request for guidance. Complaint Ex. A.

Commerce's memorandum stated that Fujitsu filed a petition for a scope determination on October 20, 1992. *Id.* It then said:

This request for a scope investigation, however, was filed after the entries subject to protests 3901–92–101122, 3901–92–101127 and 3901–92–101549 had been liquidated. Any scope determination made by the Department will apply prospectively. Therefore the results of this scope investigation does [sic] not affect the entries liquidated prior to the scope inquiry. . . . Therefore we recommend that the Customs Service deny protests 3901–92–101122, 3901–92–101127 and 3901–92–

101549. and hold protest 3901–92–101963 until the Department completes its scope investigation.

*Id.*

Fujitsu alleges that this letter is "an integral part of the scope determination", and that Fujitsu is in effect appealing the outcome of its scope petition. Complaint ¶¶ 42, 43. The Court does not agree.

As concluded in section A, *supra,* Fujitsu's protests were null and void *ab initio.* Customs' mistaken decision to hold them pending the eventual outcome of the scope petition could not give them effect. By the same reasoning, Customs' request for advice from Commerce as to their disposition, and its apparently following that advice cannot give them effect. As a matter of law, Customs and Commerce had no jurisdiction to act on the protests, pursuant to 19 U.S.C. §§ 1514(a) and 1516a. Therefore, like the protests themselves, their actions regarding the protests had no legal effect.

■ Moreover, Fujitsu does not allege that the protests complied with 19 C.F.R. § 353.29, which sets forth the requirements for an application for a scope determination directed to Commerce. In the absence of such compliance, the protests cannot have initiated a scope proceeding as to the entries they cover. Therefore, they cannot be part of the scope determination.

■ Fujitsu asserts that this Court has jurisdiction over the Second Cause of Action pursuant to 28 U.S.C. § 1581(c). This subsection provides for this Court's jurisdiction over actions commenced under 19 U.S.C. § 1516a. In effect, the section 1581(c) jurisdiction is coextensive with section 1516a(a)(2)(B). As stated in subsection A, *supra,* subsection 1516a(a)(2)(B) sets forth the exclusive list of determinations that can be appealed to this Court.

The Court finds that the memorandum does not fall within any of the contestable

---

**3.** Much of the confusion of this case could have been avoided had Customs rejected the protests promptly as beyond its jurisdiction. Customs' action, holding the protests for a lengthy period of time and then denying them, may have given

the impression—mistaken, of course—that the protests were being decided on their merits. In the Court's view, the facts as pleaded do not state a cause of action.

categories of determinations in section 1516a(a)(2)(B). It was extra-legal and not part of a scope determination, and it does not come within any other category. Since the memorandum thus cannot provide a basis for jurisdiction under subsection 1581(c), the Second Cause of Action must be dismissed for lack of jurisdiction.

### C. Plaintiff's Third Cause of Action

■ Plaintiff's Third Cause of Action is an attempt to invoke this Court's jurisdiction under 28 U.S.C. § 1581(i), also known as the Court's "residual" jurisdiction. *See, e.g., Playhouse Import & Export, Inc. v. United States,* 18 CIT 41, 45, 843 F.Supp. 716, 720 (1994), *aff'd on reh'g* 18 CIT 438 (1994). Subsection 1581(i) exists "only when no other remedy is available or when other remedies that may be available are shown to be manifestly inadequate." 18 CIT at 439. For a party to invoke 1581(i) jurisdiction, "there must be terms within the language of 1581(i) which cover the issues that plaintiff brings before the Court." *Carnival Cruise Lines, Inc. v. United States,* 18 CIT 1020, 1025, 866 F.Supp. 1437, 1442 (1994). Finally, "[t]he theory that 28 U.S.C. § 1581(i) can be used to create a cause of action where one does not otherwise exist has been repeatedly rejected." *Playhouse Import,* 18 CIT at 45, 843 F.Supp. at 720, quoting *ITT Semiconductors v. United States,* 6 CIT 231, 237, 576 F.Supp. 641, 646 (1983).

In its brief, Fujitsu asserts that it "is challenging Commerce's arbitrary recommendation that Customs deny Fujitsu Ten's protests when Commerce was on notice of Customs' mistaken interpretation of the antidumping duty finding on Tuners from Japan." Plaintiff's Response to Defendant's Motion to Dismiss at 15–16. As has been determined above, Commerce's recommendation, contained in its memorandum to Customs, was a nullity because the protests it discussed were void *ab initio.* It cannot confer jurisdiction on this Court. Without belaboring the point, it appears that plaintiff is trying to "create a cause of action where one does not otherwise exist." This it cannot do.

■ As a final observation, the Court notes in its reading of section 1581(i), that the statute expressly excludes from its ambit "jurisdiction over an antidumping or countervailing duty determination which is reviewable ... by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 [19 U.S.C. § 1516a(a) ]...." 28 U.S.C. § 1581(i). As found earlier, the underlying issue here, *viz.,* the scope of an antidumping duty order, is contestable under section 1516a(a)(2)(B)(vi). Therefore, even if the Court were to ignore the verbiage about Commerce's misbegotten memorandum, subsection 1581(i) would not create jurisdiction.

In the clear absence of jurisdiction, the Court does not reach the government's contention that the Third Cause of Action fails to state a claim upon which relief can be granted.

### CONCLUSION

Fujitsu had an opportunity to apply to Commerce for a scope review before its entries were liquidated and it failed to do so. The relevant fact here is that Fujitsu intentionally or negligently ignored an adequate—and exclusive—statutory remedy. Its current focus on Commerce's recommendation to Customs that the protests be denied does not create an alternative basis for jurisdiction. In the absence of the exhaustion of its administrative remedies, Fujitsu has not established that this Court has jurisdiction over its action.

For the foregoing reasons, the United States' motion is granted, and this action is dismissed in its entirety with prejudice.