**SANDVIK STEEL COMPANY,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**Fujitsu Ten Corporation of America,**
**Plaintiff–Appellant,**

v.

**United States, Defendant–Appellee.**

**Nos. 97–1261, 97–1338.**

United States Court of Appeals,
Federal Circuit.

Nov. 13, 1998.

Warren E. Connelly, Akin, Gump, Strauss, Hauer & Feld, L.L.P., for plaintiff-appellant Sandvik Steel Company.

James A. Curley, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, U.S. Department of Justice, New York City, argued, for defendant-appellee United States, in 97–1261. With him on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, Washington, DC, and Joseph I. Liebman, Attorney-in Charge, International Trade Field Office. Of counsel on the brief were Beth C. Brotman, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs Service, New York City; and Dean A. Pinkert, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, Washington, DC. Of counsel was Joan L. MacKenzie, Attorney.

Mark S. Zolno, Katten Muchin & Zavis, Chicago, IL, argued, for plaintiff-appellant Fujitsu Ten Corporation of America. With him on the brief was Michael E. Roll.

Rhonda K. Schnare, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued, for defendant-appellee United States in 97–1338. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director.

Before SCHALL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and GAJARSA, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The issue in these two cases, which we decide in a single opinion, is whether the failure of an importer to exhaust its administrative remedy by seeking a ruling by the Department of Commerce ("Commerce") that an antidumping order does not cover certain products it imported, precludes it from obtaining review of that issue in the Court of International Trade by there challenging the United States Customs Service's ("Customs") denial of its subsequent protest to Customs' assessment of antidumping duties on the products. The Court of International Trade dismissed the suits for want of jurisdiction. We affirm.

## I

*The regulatory scheme.*

1. *Assessment of Duties.* Upon importation of merchandise into the United States, the importer deposits with Customs an amount equal to the duties that the port director estimates will be owed when the entries of merchandise are "liquidated." *See* 19 C.F.R. §§ 141.101, 141.103, 159.1 (1998). "Liquidation" is defined as "the final computation or ascertainment of the duties or drawback accruing on an entry." § 159.1.

As part of its "final computation or ascertainment" of duties, Customs determines the classification of the entered merchandise under the Harmonized Tariff Schedule of the United States. *See* 19 U.S.C. § 1202 (1994); 19 C.F.R. § 152.11. The importer may within 90 days of liquidation file a protest with Customs challenging the classification of its merchandise. *See* 19 C.F.R. §§ 174.11(b), 174.12(e). If Customs denies the protest, the importer may challenge the classification by filing suit in the Court of International Trade. *See* 28 U.S.C. § 1581(a) (1994). If a timely protest is not filed, the duty that Customs has assessed is "final and conclusive," 19 U.S.C. § 1514(a) (1994 & Supp. II 1996), and not subject to judicial challenge.

2. *Antidumping Duties.* Following determinations (a) by Commerce that foreign goods are being "dumped" in the United States, *i.e.,* sold there for below their fair

market value, and (b) by the International Trade Commission that the effect of such sales is to injure an American industry, Commerce may issue an antidumping order imposing additional duties upon the "dumped" imports designed to eliminate the differential. *See* 19 U.S.C. § 1673 (1994). An adversely affected person may challenge an antidumping order (or the failure to issue one) by filing suit in the Court of International Trade. *See* 28 U.S.C. § 1581(c) (1994); 19 U.S.C. §§ 1516a(a)(2)(A) (Supp. II 1996), 1516a(a)(2)(B)(i), (ii) (1994).

Customs applies and enforces the antidumping orders, upon referral from Commerce. *See* 19 C.F.R. §§ 159.41, 351.211. When Customs believes an antidumping order covers entered merchandise, it "suspends" liquidation and notifies the importer of "determined or estimated" antidumping duties. 19 C.F.R. § 159.58(a).

In the administration and application of antidumping orders, questions frequently arise whether those orders cover particular imports. By regulation, Commerce has provided an administrative procedure for determining that issue, *i.e.*, a "scope ruling," in which Commerce determines whether a particular import is within the scope of the antidumping order. *See* 19 C.F.R. § 351.225. Within 30 days, a Commerce scope determination may be challenged in the Court of International Trade. *See* 28 U.S.C. § 1581(c) (1994); 19 U.S.C. §§ 1516a(a)(2)(A) (Supp. II 1996), 1516a(a)(2)(B)(vi) (1994).

*The Present Cases.* In each of these cases, when the importer entered its products into the United States, Customs suspended liquidation and required the deposit of antidumping duties to which the products would be subject if an outstanding antidumping duty order covered them. Neither importer timely sought a scope determination. Instead, each waited until Commerce liquidated the entries, thereby subjecting them to the antidumping duties, filed with Customs a protest against the liquidation and, after Customs denied the protest, filed suit in the Court of International Trade challenging the merits of the imposition of the antidumping duties. In each case, the court dismissed the suit for lack of jurisdiction.

1. *Sandvik, No. 97–1261.* Sandvik Steel Company ("Sandvik") made six entries of composite steel tubing from Sweden. Customs initially suspended liquidation of these entries. Both Sandvik and the government recognize that Customs' ground for that action was its belief that the entries were subject to an antidumping order (Customs also liquidated and collected antidumping duties on a seventh entry of composite tubing, but that action is not here challenged.) Customs liquidated and collected antidumping duties on the six entries. Sandvik filed with Customs a protest to the assessment of those antidumping duties, which Customs denied. Sandvik challenged that denial in the Court of International Trade.

2. *Fujitsu, No. 97–1338.* Between March 1989 and January 1992, Fujitsu Ten Corporation of America ("Fujitsu") imported into the United States from Japan "front ends," which are electronic parts used with automobile radio tuners. Customs—apparently concluding that the front ends were covered by an antidumping order on "[t]uners of the type used in consumer electronic products"— suspended liquidation and required Fujitsu to deposit estimated antidumping duties. Subsequently Customs liquidated many of the entries.

On October 20, 1992, Fujitsu asked Commerce to determine whether the antidumping order covered the front ends. Both before and after filing that request for a scope inquiry, Fujitsu filed protests with Customs challenging the assessment of antidumping duties. Following Commerce's recommendation, Customs denied the protests with respect to all entries that had been liquidated before Fujitsu had requested a scope inquiry from Commerce. In the scope inquiry Commerce then held that with respect to the entries that had not been liquidated, the antidumping order did not cover the front ends. Fujitsu's suit in the Court of International Trade challenged both Customs' denial of Fujitsu's protests and Commerce's recommendation that Customs take that action.

3. *The decisions of the Court of International Trade.* The Court of International Trade decided *Fujitsu* first. *See Fujitsu*

*Ten Corp. of America v. United States,* 957 F.Supp. 245 (CIT 1997). On the government's motion, the court dismissed the complaint. *See id.* at 246, 250. It stated:

> In the absence of the exhaustion of its administrative remedies, Fujitsu has not established that this Court has jurisdiction over its action.

*Id.* at 250. It also stated:

> Fujitsu had an opportunity to apply to Commerce for a scope review before its entries were liquidated and it failed to do so. The relevant fact here is that Fujitsu intentionally or negligently ignored an adequate – and exclusive – statutory remedy.

*Id.*

The court discussed the statutory provisions governing its jurisdiction that Fujitsu had invoked, but concluded that they did not confer jurisdiction over Fujitsu's claim. *See id.* at 248–49. Finally, the court concluded that the memorandum in which Commerce recommended that Customs deny Fujitsu's protest "does not fall within any of the contestable categories of determination" made reviewable under the court's jurisdictional statute, *id.* at 249–50—a ruling Fujitsu does not challenge in its appeal.

The court then dismissed *Sandvik*. *See Sandvik Steel Co. v. United States,* 957 F.Supp. 276, 281 (CIT 1997). Citing its decision in *Fujitsu,* the court stated that a challenge to "Customs' inclusion of merchandise within the scope of an antidumping duty order ... must be made before Commerce, and subsequently, an action commenced in the Court of International Trade" and that "[f]ailure to follow that procedure renders a Customs decision concerning the scope of an antidumping order 'final and conclusive'" and that decision "cannot be challenged under the protest procedure." *Id.* at 279. The court ruled that the various jurisdictional provisions upon which Sandvik relied did not authorize the court to entertain Sandvik's claim, and that suit under one of those provisions is barred by the limitations period there specified. *See id.* at 278–81. Sandvik does not challenge this latter ruling.

## II

A. "The doctrine of exhaustion of administrative remedies ... provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). When administrative remedies have not been exhausted, "judicial review of administrative action is inappropriate," *Sharp Corp. v. United States,* 837 F.2d 1058, 1062 (Fed.Cir.1988), since it is "a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54 (1952).

By regulation Commerce has provided a procedure "to determin[e] whether a particular product is within the scope of an [antidumping] order." 19 C.F.R. § 351.225(a). An "interested party," as defined in the regulation, may file with the Secretary an application for such determination. *See id.* § 351.225(c). The Secretary may make that determination without any inquiry, or may do so after conducting a "scope inquiry" that follows specified procedures. *See id.* § 351.225(f). If the Secretary initiates a scope inquiry, any prior suspension of liquidation is continued until the administrative proceeding is concluded. *See id.* § 351.225(*l*). If the Secretary determines that the product is within the scope of the antidumping order, the suspension continues; if there has been no suspension, the Secretary instructs Customs to suspend the liquidation and require a cash deposit of estimated antidumping duties; if the Secretary determines that the product is not within the scope of the antidumping order, the Secretary terminates any suspension and instructs Customs to refund any deposit of estimated antidumping duties. *See id.* § 351.225(*l*)(2), (3).

The detailed scope determination procedures that Commerce has provided constitute

precisely the kind of administrative remedy that must be exhausted before a party may litigate the validity of the administrative action. Applying the exhaustion doctrine in the present situation "serves the twin purposes [of the doctrine] of protecting administrative agency authority and promoting judicial efficiency." *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

The first purpose—"to allow an administrative agency to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors," *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972)—is particularly applicable here because of the nature of the inquiry the Secretary conducts in making a scope determination. The issue is whether an antidumping order of Commerce covers particular imports. Since Commerce drafted the antidumping order, the order's meaning and scope are issues particularly within the expertise of that agency. In interpreting its own order, Commerce is "perform[ing] functions within its special competence." *Id. See also Ericsson GE Mobile Communications, Inc. v. United States,* 60 F.3d 778, 783 (Fed.Cir.1995) ("As the agency charged with administering the antidumping duty program, the Commerce Department is responsible for interpreting the antidumping duty order and determining whether certain products fall within the scope of the order as interpreted."). Courts customarily give substantial weight to an agency's interpretation of its own orders. *See, e.g., CMC Real Estate Corp. v. Interstate Commerce Comm'n,* 807 F.2d 1025, 1034 (D.C.Cir.1986) ("It is well established that an agency's interpretation of the intended effect of its own orders is controlling unless clearly erroneous."). Sound administration of the antidumping laws counsels that Commerce, which administers those laws, should in the first instance decide whether an antidumping order covers particular products.

The second purpose of the exhaustion doctrine—"promoting judicial efficiency," *McCarthy,* 503 U.S. at 145, 112 S.Ct. 1081, by enabling an agency "to correct its own errors

so as to moot judicial controversies," *Parisi,* 405 U.S. at 37, 92 S.Ct. 815—is equally applicable here. If Sandvik and Fujitsu had filed timely applications for scope determinations and if Commerce had concluded that the antidumping orders do not cover their imports, there would have been no need for this litigation. Moreover, since in the scope inquiry Fujitsu instituted after Customs had liquidated some of its entries, Commerce held that the antidumping order did not cover the unliquidated entries, if Fujitsu had timely sought a scope determination with respect to all of its entries, Fujitsu's suit in the Court of International Trade need never have been filed.

The fact that the administrative remedy was provided by a regulation rather than by a statute does not make the exhaustion doctrine inapplicable or inappropriate. Although "[w]here Congress specifically mandates, exhaustion is required," even "where Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy,* 503 U.S. at 144, 112 S.Ct. 1081. Here, for the reasons already discussed, exhaustion is particularly appropriate. Moreover, although Congress did not prescribe the scope determination proceedings, it recognized the existence of that remedy in the statutory provisions governing the Court of International Trade's jurisdiction over antidumping duty issues—a topic to which we now turn.

B. The statutory provisions governing the jurisdiction of the Court of International Trade support and confirm our conclusion that failure timely to seek a scope determination bars an importer from attempting to challenge in the Court of International Trade Customs' denial of a protest to Customs' application of an antidumping order to particular imports.

Separate provisions deal with review by the Court of International Trade of (1) Commerce's actions relating to antidumping duty orders and (2) Customs' denial of protests to actions by Customs.

Section 1516a of Title 19 of the United States Code governs "Judicial review in countervailing duty and antidumping duty proceedings." Among the determinations

that are made reviewable in the Court of International Trade is

> A determination by the administering authority as to whether a particular type of merchandise is within the class or type of merchandise described in an existing finding of dumping or antidumping or countervailing duty order.

19 U.S.C. § 1516a(a)(2)(B)(vi) (1994). Since Commerce is the "administrating authority" of the antidumping laws, *see* 19 U.S.C. §§ 1516a(f)(1), 1677(1) (1994), this section in terms gives the Court of International Trade jurisdiction to review Commerce's scope determinations.

> Section 1581(a) of Title 28 gives the Court of International Trade

> exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

28 U.S.C. § 1581(a) (1994). Section 515 of that Act, codified at 19 U.S.C. § 1515 (1994 & Supp. II 1996) (*see also* references following the text of 28 U.S.C. § 1581), deals with protests filed under 19 U.S.C. § 1514 (1994 & Supp. II 1996). Section 1514(b), "Finality of determinations," provides in relevant part:

> With respect to determinations made under section [1330] of this title or subtitle IV of this chapter which are reviewable under section 1516a of this title, determinations of the Customs Service are final and conclusive upon all persons (including the United States and any officer thereof) unless a civil action contesting a determination listed in section 1516a of this title is commenced in the United States Court of International Trade....

19 U.S.C. § 1514(b) (1994). Section 1330 deals with the International Trade Commission and is irrelevant here. Subtitle IV (19 U.S.C. §§ 1671–1677n) covers countervailing and antidumping duties.

What section 1514(b) means for these cases is that Customs determinations relating to antidumping duties are final unless a civil action contesting a determination listed in section 1516a is commenced in the Court of International Trade. Section 1516a provides for review of determinations by the administering agency (Commerce) or by the International Trade Commission; it does not provide for review of determinations by Customs. Section 1514(b) therefore makes "final and conclusive" Customs' denial of protests to Customs' application of antidumping duty orders on the imports of Sandvik and Fujitsu because those companies failed timely to seek scope determinations from Commerce and then to seek judicial review under section 1516a(a)(2)(B)(vi) in the Court of International Trade, of any adverse decision by Commerce.

C. This Court has twice rejected comparable attempts to obtain review in the Court of International Trade of questions relating to antidumping duties by challenging Customs' denial of protests to that agency's application of those orders.

In *Nichimen America, Inc. v. United States*, 938 F.2d 1286, 9 Fed. Cir. (T) 103 (Fed.Cir.1991), Commerce informed an importer that it would assess additional dumping duties unless the importer requested an administrative review by Commerce. *See id.* at 1287, 938 F.2d 1286, 9 Fed. Cir. (T) at 105. The importer did not so request, the additional duties were assessed and paid, the importer filed a protest with Customs against those additional duties and, after Customs denied the protest, filed suit in the Court of International Trade. *See id.* at 1287–88, 938 F.2d 1286, 9 Fed. Cir. (T) at 105–06. That court dismissed the suit for lack of jurisdiction. *See id.* at 1288, 938 F.2d 1286, 9 Fed. Cir. (T) at 106. This court affirmed the dismissal with respect to four of the importer's contentions, holding that the questions should have been presented to Commerce for administrative review, that they were not protestable, and that the Court of International Trade therefore lacked jurisdiction over the issues. *Id.* at 1291–92, 9 Fed. Cir. (T) at 108–11.

In *Mitsubishi Electronics America, Inc. v. United States*, 44 F.3d 973 (Fed.Cir.1994), the importer challenged in the Court of International Trade the rate at which estimated antidumping duties were preliminarily assessed by Customs (on Commerce's instructions), by filing a protest with Customs after liquidation. *See id.* at 975. We held that

because determinations regarding the "rate and amount" of antidumping duties were made by Commerce rather than Customs, that court had no jurisdiction to review Customs' denial of the protest. *See id.* at 977.

Those cases are factually different from the present cases. There the importers challenged the calculation of antidumping duties, here they challenge the applicability of those duties. This distinction, however, is immaterial. The basic principle applied in *Nichimen* and *Mitsubishi* is equally applicable to the present case: that, as stated in *Nichimen,* the statute "exclude[s] antidumping determinations from the matters that can be protested to Customs." 938 F.2d at 1290, 9 Fed. Cir. (T) at 108.

Because neither Sandvik nor Fujitsu exhausted its administrative remedies by timely seeking a scope determination from Commerce (as the Court of International Trade held), that court correctly dismissed their suits challenging the applicability of the antidumping duty orders to their imports by invoking the Customs protest procedure.

## CONCLUSION

The judgments of the Court of International Trade dismissing both of these suits are

*AFFIRMED.*