**Slip Op. 08-85**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  SENIOR JUDGE NICHOLAS TSOUCALAS**

_____
                                        :
CONSOLIDATED FIBERS, INC.               :
and STEIN FIBERS, LTD.,                  :
                                        :
              Plaintiffs,               :
                                        :
              v.                        :
                                        :    Court No.:
UNITED STATES,                          :    07-00233
                                        :
              Defendant,                :
                                        :
              and                       :
                                        :
DAK AMERICAS LLC, NAN YA PLASTICS       :
CORP. AMERICA and WELLMAN, INC.,        :
                                        :
              Defendant-Intervenors.    :
_____:


**Held:** Plaintiffs' motion for judgment upon the agency record denied.  The United States International Trade Commission's final determination affirmed.

      deKieffer & Horgan, (Gregory S. Menegaz) for Plaintiffs, Consolidated Fibers, Inc. and Stein Fibers, Ltd.

      James M. Lyons, General Counsel; Neal J. Reynolds, Assistant General Counsel, Office of the General Counsel, United States International Trade Commission (Karl S. Von Schriltz), for Defendant, United States.

      Kelley Drye & Warren, LLP, (Paul C. Rosenthal; Kathleen W. Cannon; David C. Smith, Jr.) for Defendant-Intervenors, DAK Americas LLC, Nan Ya Plastics Corp. America and Wellman, Inc.


                              Dated: August 20, 2008

**OPINION**

This matter is before the Court on motion for judgment upon the agency record brought by plaintiffs Consolidated Fibers, Inc. and Stein Fibers, Ltd. ("Plaintiffs") pursuant to USCIT Rule 56.2. Plaintiffs challenge aspects of the final affirmative determination by the United States International Trade Commission ("Commission" or "ITC") in <u>Certain Polyester Staple Fiber From China</u> ("<u>Final Determination</u>"), Inv. No. 731-TA-1104, USITC Pub. 3922 (June 2007) (CR 335).[1]  Domestic producers DAK Americas LLC, Nan Ya Plastics Corp. America and Wellman, Inc. join as Defendant-Intervenors.

**JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(i).

**BACKGROUND**

On June 23, 2006, the Commission instituted an antidumping investigation on certain polyester staple fiber ("PSF") from the People's Republic of China ("PRC") upon receipt of a petition filed by domestic producers DAK Americas LLC, Nan Ya Plastics Corp. America and Wellman, Inc.  See <u>Certain Polyester Staple Fiber From China</u>, 71 Fed. Reg. 37,097 (June 29, 2006).

In August 2006, the Commission issued an affirmative preliminary determination and instituted the final phase

---

[1]     Citations to the confidential documents of the administrative record are cited "CR" followed by the document number.

investigation.  See Certain Polyester Staple Fiber From China, 71
Fed. Reg. 46,241 (August 11, 2006).

On December 18, 2006, the Commission issued draft
questionnaires with an accompanying memorandum requesting comments
on those questionnaires.  See Memorandum from Robert Carpenter to
Parties dated December 18, 2006 (PR 163).[2]  Domestic producers
submitted comments on the draft questionnaires asking the
Commission to collapse pricing of certain PSF made from virgin
materials ("virgin PSF") and PSF made from regenerated or recycled
materials ("regenerated PSF").  These domestic producers argued
that regenerated PSF and virgin PSF were one like product and they
were found to be directly competing in the market.  See
Petitioners' Comments on Draft Questionnaires dated December 21,
2006 (CR 115).  Based on the comments received, the Commission
determined to request pricing data on PSF without regard for input
materials.  Reviewing the pricing information, the Commission found
that underselling by imports occurred in 37 of 54 instances.  See
Final Report V-16 (CR 315).

A notice of the schedule for the final phase investigation was
published on January 11, 2007.  See 72 Fed. Reg. 1341.  A notice of
the revised schedule was published on February 16, 2007.  See 72
Fed. Reg. 7676.  The revised schedule called for prehearing briefs

---

[2]    Citations to the public documents of the administrative
record are cited "PR" followed by the document number.

to be filed by March 6, 2007, a hearing to be held on March 13, 2007 and posthearing briefs to be filed by March 22, 2007.  See id. Parties were also invited to file comments on Commerce's final determination by April 16, 2007.  See id.

On May 8, 2007, the Commission closed its record.  On May 10, 2007, Plaintiffs filed their final comments.  On May 14, 2007, the Commission staff issued a memorandum identifying certain portions of Plaintiffs' final comments as new factual information.  See Memorandum INV-EE-050 (May 14, 2007) (PR 126).

On May 15, 2007, the Commission voted unanimously that subject imports of PSF from China had caused present material injury to domestic producers of the like product.  The Commission's views and determinations were published in June 2007.  See 72 Fed. Reg. 30,394 (May 31, 2007).

Plaintiffs contend that the Commission's affirmative material injury determination was unsupported by substantial evidence and otherwise contrary to law because the Commission failed to distinguish between virgin PSF and regenerated PSF, and to consider the color of PSF in pricing comparisons.  See Mot. For J. Upon The Agency R. On Behalf Of Consolidated Fibers, Inc. and Stein Fibers, Ltd. ("Pls.' Mem.") at 1.  The Commission responds that the Final Determination was supported by substantial evidence and otherwise in accordance with law and requests that the Court affirm it.  See Mem. Of Def. United States International Trade Commission In Opp'n

To Pls.' Mot. For Summ. J. On The Agency R. ("ITC Mem.") at 1. Defendant-Intervenors' arguments are not addressed separately where they parallel those of the Commission. See Defendant-Intervenors' Resp. Br. ("Domestic Producers' Resp.").

**STANDARD OF REVIEW**

The Court will uphold an ITC determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2000).

**DISCUSSION**

**I. Statutory Framework and the Final Determination**

Pursuant to 19 U.S.C. § 1671d(b), the Commission is charged with determining whether a domestic industry is materially injured by reason of a subject import. Material injury is defined as "harm [to the domestic industry] which is not inconsequential, immaterial, or unimportant." 19 U.S.C. § 1677(7)(A). To find material injury, the Commission must find a present material injury or a threat thereof and causation of such harm by reason of subject imports. See Hynix Semiconductor, Inc. v. United States, 30 CIT __, __, 431 F. Supp. 2d 1302, 1306 (2006) (citation omitted). "When determining whether subject imports have caused material injury to the domestic industry, the Commission must evaluate three factors: (1) the volume of subject imports; (2) the price effects of subject imports on domestic like products; and (3) the impact of subject imports on the domestic producers of domestic like

products."  See id. (citing 19 U.S.C. § 1677(7)(B)(i)(I)-(III)).
In addition, the Commission "'may consider such other economic
factors as are relevant to the determination.'"  Id. (quoting 19
U.S.C. § 1677(7)(B)(ii)).

**II.  The Commission's Disregard of Plaintiffs' Final Comments**

In the Final Determination, the Commission disregarded certain
portions of Plaintiffs' final comments upon finding that they
constituted new factual information.  See Memorandum INV-EE-050
(May 14, 2007) (PR 126).  The disregarded information concerned the
distinctions between virgin PSF and regenerated PSF.  See Pls.'
Mem. at 7.  Plaintiffs contend that the Commission acted
unreasonably because the facts they alleged in the final comments
were "clear from the administrative record before the Commission."
Id.  Plaintiffs thus argue that the Final Determination is
unsupported by substantial evidence because the Commission failed
to consider these disregarded facts.  See id. at 10.

Defendant responds that Plaintiffs' final comments were
improperly styled as miniature hearing briefs to make arguments
that could have been made earlier and included new factual
information contrary to statutory and regulatory requirements set
forth in 19 U.S.C. § 1677m(g) and 19 C.F.R. § 207.30(b).  See
Def.'s Mem. at 15-16. Moreover, Defendants contend that some facts
contained in Plaintiffs' final comments were without citation to
record documents and others were explicitly drawn from the record

before the United States Department of Commerce ("Commerce").  See
id. at 17.  As such, Defendant states that it reasonably identified
and disregarded new factual information.

The Commission's disregard of the certain factual information
in Plaintiffs' final comments was reasonable and consistent with
the law.  The statute directs the Commission as follows:

> Information that is submitted on a timely basis to the
> administering authority or the Commission during the
> course of a proceeding under this subtitle shall be
> subject to comment by other parties to the proceeding
> within such reasonable time as the administering
> authority or the Commission shall provide. The
> administering authority and the Commission, before making
> a final determination . . . shall cease collecting
> information and shall provide the parties with a final
> opportunity to comment on the information obtained by the
> administering authority or the Commission (as the case
> may be) upon which the parties have not previously had an
> opportunity to comment. Comments containing new factual
> information shall be disregarded.

19 U.S.C. § 1677m(g).  Thus, the statute not only requires the
Commission to disregard new factual information, it provides that
a party may comment on information upon which it has not previously
had an opportunity to comment.  The Commission's regulations
contain a similar provision, which provides, in relevant part:

> The parties shall have an opportunity to file comments on
> any information disclosed to them after they have filed
> their posthearing brief pursuant to § 207.25. Comments
> shall only concern such information[.]  A comment may
> address the accuracy, reliability, or probative value of
> such information by reference to information elsewhere in
> the record, in which case the comment shall identify where
> in the record such information is found. Comments
> containing new factual information shall be disregarded.

19 C.F.R. § 207.30(b).

The Court agrees with the Commission that Plaintiffs improperly fashioned its final comments as briefs to belatedly make arguments it should have made earlier in the investigation. In addition, the Court finds that the Commission properly disregarded portions of Plaintiffs' final comments. The disregarded facts were new information that either (1) did not have a citation to the record, which is also contrary to 19 C.F.R. § 207.30(b) requiring plaintiffs to identify where in the record such information is found, or (2) cited to the administrative record before Commerce, which is not part of the Commission's record, see 19 C.F.R. § 207.4. Had the Commission accepted new factual information at such a late stage in the investigation, after the record had closed, it would have run afoul of 19 U.S.C. § 1677m(g) requiring a public comment period.

Indeed, this Court has previously approved the Commission's disregard of new factual information submitted in the final comments. See Navneet Publications (India) Limited v. United States, Slip Op. 08-22 at 25-29; Committee For Fair Beam Imports v. United States, 31 CIT __, 477 F. Supp. 2d 1313, n.16 (2007). Thus, the Commission's disregard of the new factual information submitted in Plaintiffs' final comments was in accordance with law.

### III.  The Commission's Affirmative Material Injury Determination Is Supported by Substantial Evidence

#### A.   Pricing Comparisons

Having determined that the Commission properly disregarded certain portions of Plaintiffs' final comments as new factual information, the Court next addresses Plaintiffs' arguments concerning two particular aspects of the Commission's pricing comparisons.   First, Plaintiffs argue that the Commission's collapsing of pricing data between virgin and regenerated PSF is not supported by substantial evidence.  See Pls.' Mem. at 11-12. According to the Plaintiffs, the record unequivocally reflects that there were significant differences in raw materials and raw material costs, that the vast majority of Chinese production for export to the United States was focused on regenerated PSF and that the margins calculated for the two product categories were vastly different.  See id. at 11.

Second, Plaintiffs argue that the Commission's determination not to consider the color of PSF in its pricing comparisons is not supported by substantial evidence.  See id. at 12-14.  In support of this argument, Plaintiffs point to the Staff Report, which they state is "replete with reports from importers that color was a factor in their buying and pricing decision."  Id. at 12.  Indeed, Plaintiffs note that the Petitioners argued before Commerce that color was key to pricing, then downplayed the importance of color before the Commission.  See id. at 13.  Plaintiffs contend that

because Commerce found that color was essential to pricing, the Commission's price comparisons not including color were invalid.[3]

Defendant responds that Plaintiffs are precluded from raising these pricing issues on appeal because they failed to raise them in the administrative review. See Def.'s Mem. at 18-22. Defendant states that the Commission circulated copies of the draft questionnaires to parties on December 18, 2006 accompanied by a memorandum specifically requesting comments by December 21, 2006 on the proposed combination of regenerated PSF and virgin PSF into the same pricing products. See id. at 20. Yet, according to Defendant, Plaintiffs failed to comment on the Commission's proposed pricing products by the relevant deadline or to raise these issues to the Commission through briefs and hearing testimony. See id.

Moreover, Defendant states that Plaintiffs never argued before the Commission that it should have collected pricing data on each available color of certain PSF. See id. at 20. Indeed, Defendant

---

[3] Although Plaintiffs complain that the Commission's determination is invalid because the Commission used different pricing descriptors than did Commerce, the Court finds that nothing prohibits the Commission and Commerce from using different pricing comparisons. The two agencies make pricing comparisons for different reasons. Compare 19 U.S.C. § 1677(7) with 19 U.S.C. § 1677b. This Court has long recognized the division of labor between the two agencies "even where it has resulted in decisions which are difficult to reconcile[.]" Algoma Steel Corp., Ltd. v. U.S., 12 CIT 518, 523, 688 F. Supp. 639, 644 (1988) (citations omitted).

notes that Plaintiffs raised these issues for the first time in their final comments on May 10, 2007, two days after the close of the record and five days before the Commission's vote. See id. at 19. In addition, Defendant contends that since no other party raised the identical issues, the Commission did not have the opportunity to otherwise consider them.[4] See id. at 21-22.

The Court agrees with Defendant and finds that Plaintiffs are precluded from raising these issues on appeal. See 28 U.S.C. § 2637(d) (stating that the court "shall, where appropriate, require the exhaustion of administrative remedies."); JCM, Ltd. v. United States, 210 F.3d 1357, 1359 (Fed. Cir. 2000) ("In the antidumping context, Congress has prescribed a clear, step-by-step process for

---

[4]     Defendant concedes that two interested parties, Ashley Furniture and Southern Textiles, requested collection of pricing data on regenerated PSF and virgin PSF on the basis that such data would accurately capture possible injury to particular segments of the domestic industry. See Def.'s Mem. at 21. However, Defendant maintains that this position is distinguishable from Plaintiffs' current argument that the Commission should have collected separate pricing data on regenerated PSF and virgin PSF in its underselling analysis. See id. at 22. The Court agrees with Defendant that Ashley Furniture and Southern Textiles' position focusing on possible injury to a particular segments of the domestic industry did not sufficiently afford the Commission an opportunity to evaluate the same arguments that Plaintiffs advanced here with respect to the Commission's underselling analysis.

The parties do not dispute that no interested party made the argument that the Commission should have collected separate pricing data on each available color although Ashley Furniture and Southern Textiles did argue that the Commission should collect pricing data on colored PSF and noncolored PSF. See id.

a claimant to follow, and the failure to do so precludes it from obtaining review of that issue in the Court of International Trade." (citing <u>Sandvik Steel Co. v. United States</u>, 164 F.3d 596, 599-600 (Fed. Cir. 1998); <u>National Corn Growers Ass'n v. Baker</u>, 840 F.2d 1547, 1555-57 (Fed. Cir. 1988))).  Indeed, this Court has "'generally take[n] a strict view of the need [for parties] to exhaust [their] remedies by raising all arguments' in a timely fashion so that they may be appropriately addressed by the agency." <u>Ta Chen Stainless Steel Pipe, Ltd. v. United States</u>, 28 CIT 627, 644, 342 F. Supp. 2d 1191, 1205 (2004) (quoting <u>Pohang Iron and Steel Co. v. United States</u>, 23 CIT 778, 792 (1999))(alterations in original).  None of the exceptions to the rule requiring exhaustion of administrative remedies apply here.  <u>See</u> <u>Alhambra Foundry Co. Ltd., v. United States</u>, 12 CIT 343, 347, 685 F. Supp. 1252, 1256 (1988) (stating that when mandating administrative exhaustion would prove "futile or an insistence on a useless formality," the court has waived the requirement).[5]

The record reflects that the Commission circulated copies of

---

[5]    Courts have waived the requirement of exhausting administrative remedies in cases where:  (1) plaintiff raised a new argument that was purely legal and required no further agency involvement; (2) plaintiff did not have timely access to the confidential record; (3) a judicial interpretation intervened since the remand proceeding, changing the agency result; or (4) it would have been futile for plaintiff to have raised its argument at the administrative level. <u>See</u> <u>Budd Co., Wheel & Brake Div. v. United States</u>, 15 CIT 446, 452 n. 2, 773 F. Supp. 1549, 1555 n. 2 (1991).  None of these exceptions are relevant here.

the draft questionnaire to the parties on December 18, 2006 and invited comments by December 21, 2006.  The Commission specifically requested the parties to comment on the proposed combination of regenerated PSF and virgin PSF into the same pricing category. Plaintiffs did not comment on or raise the pricing issues then, but determined to wait and raise them in their final comments.  As Defendant aptly notes, by the time Plaintiffs raised these issues, no additional evidence could be collected, other parties could not respond to Plaintiffs' arguments, and the Commission was within days of its vote pursuant to a statutory deadline.

Plaintiffs thus failed to exhaust their administrative remedies with respect to the Commission's collection and analysis of pricing data and are barred from raising these issues on appeal. Indeed, "[a] party that chooses to absent itself from proceedings – whether at the administrative level or in a judicial forum – does so at its peril," Al Tech Specialty Steel Corp. v. United States, 29 CIT 276, 285, 366 F. Supp. 2d 1236, 1245 (2005), and Plaintiffs did just that.

### B.    Magnitude of Margins

Pursuant to 19 U.S.C. § 1677(7)(C)(iii)(V), the Commission must "evaluate . . . the magnitude of the margin of dumping."  In the final determination, the Commission stated that "we have considered the magnitude of the dumping margins found by Commerce, but do not find them conclusive for our analysis of impact."  See

Final Determination at 28, n. 127 (CR 335).

Plaintiffs complain that this analysis by the Commission fails to evaluate the relevant arguments and falls short of the statutory requirement. See Pls.' Mem. at 14-16. Specifically, Plaintiffs state that "[i]ndividually, and cumulatively, the final antidumping margins assigned to Chinese exporters were among the lowest found in recent history in an antidumping investigation of the PRC." Id. at 14. Plaintiffs go on to state that "the only virgin producer investigated earned a margin of 3.47%; the only regenerated PSF producer for whom 'facts available' was not used, Cixi Jiangnan, earned a de minimis margin" and that "[e]ven the recycled PSF producer for whom near total 'facts available' was used earned a 4.86% margin." Id. In light of such low margins assigned to the exporters in this case, Plaintiffs argue that "[m]erely stating that the magnitude of the margins was not influential in the final injury determination without evaluating the arguments suggesting it should be influential fails to meet the standard" required by the statute. Id. at 14-15.

The statute requires the Commission to "evaluate all relevant economic factors which have a bearing on the state of the industry in the United States, including, but not limited to . . . the magnitude of the margin of dumping." 19 U.S.C. § 1677 (7)(C)(iii)(V); Iwatsu Elec. Co. v. United States, 15 CIT 44, 48, 758 F. Supp. 1506, 1510 (1991) (stating that the "statutory

language does not  . . . require that ITC demonstrate that dumped imports, through the effects of particular margins of dumping, are causing injury."). Congress stated that this section "does not alter the requirement in current law that none of the factors which the Commission considers is necessarily dispositive in the Commission's material injury analysis." Statement of Administrative Action ("SAA"), H.R. Rep. 103-826(I), 850 reprinted in U.S.C.C.A.N. 4040, 4184 (1994). Indeed, "[n]othing in the statutory scheme compels [the Commission] to reach a certain conclusion concerning the dumping margins – the statute only compels [the Commission] to consider such margins." Asociacion de Productores de Salmon y Trucha de Chile AG v. United States, 26 CIT 29, 45, 180 F. Supp. 2d 1360, 1376 (2002)(citation omitted).

The Court finds that the Commission properly considered the magnitude of the antidumping duty margins in accordance with the law and court precedent. The statute only requires the Commission to evaluate antidumping margins as one of many relevant economic factors. See 19 U.S.C. § 1677(7)(C)(iii)(V). This Court has previously found that the Commission "reciting the margins of dumping and declining to attach any significance to the margins" was sufficient. Asociacion de Productores de Salmon, 26 CIT at 44, 180 F. Supp. 2d at 1376. Likewise, the Commission's evaluation of the dumping margin here, though contained within a footnote, fully complied with its statutory mandate. In addition, contrary to

Plaintiffs' claim, the dumping margins found by Commerce were not atypically low.  See Far Eastern Textile Ltd. v. ITC, 25 CIT 999 (2001) (ranging from 5.77 to 14.10 percent); Asociacion de Productores de Salmon, 26 CIT at 45, 180 F. Supp. 2d at 1376 (ranging from 2.22 to 10.69 percent).

### C.  Causal Nexus Between the Subject Imports And Injury To Domestic Industry

Plaintiffs also object to the Commission's finding that "[t]he primary cause of material injury to the domestic industry was the loss of volume, in terms of U.S. shipments, and market share, which was caused by the rapid increase in volume of low-priced subject imports" arguing that it was based on flawed pricing comparisons discussed supra.  Pls.' Mem. at 16.  Since the Court already ruled that Plaintiffs are precluded from raising their pricing comparisons arguments, the Court finds no merit to Plaintiffs' lack of causation argument based on flawed pricing comparisons.  In any event, the Commission reasonably found a causal connection between subject imports and injury to domestic industry.  The Commission did not rely solely on the pricing data which Plaintiffs challenge, but relied upon subject import's volume and impact stating that "subject imports greatly increased their market share, at the domestic industry's expense, in an environment of declining demand, thereby depressing domestic industry sales, production, and capacity utilization."

Final Determination at 31-32 (CR 335).  The Commission's injury determination is thus supported by substantial evidence.

**IV.  Companion Appeal of Commerce's Final Determination**

Lastly, Plaintiffs ask the Court to refrain from ruling in this action until the pending companion appeal of Commerce's final determination in Case No. 07-236 ("Commerce Appeal") can be fully adjudicated.  See Pls.' Mem. at 16-17.  First, Plaintiffs argue that the Commerce Appeal is an "all or nothing appeal in which the plaintiffs contend that Ningbo Dafa's antidumping duty margin is de minimis" rather than a "debate between various positive antidumping margin alternatives."  Id. at 17.  As such, Plaintiffs believe that the Commission's determination is subject to revision depending on the outcome of the Commerce Appeal.  Second, Plaintiffs contend that, should Ningbo Dafa prevail in the Commerce Appeal, the record establishes that the Chinese producers of regenerated PSF were not selling below fair value during the period of investigation.  See id.

Defendant maintains that it complied with  19 U.S.C. § 1677(35)(C)(ii), which requires that the Commission consider "the dumping margin or margins most recently published by [Commerce] prior to the closing of the Commission's administrative record."  Def.'s Mem. at 32.  Citing the SAA, Defendant reasons that § 1677(35)(C)(ii) "precludes challenges to a Commission determination on the basis that Commerce later modifies the

original dumping margin . . . on judicial remand." Id. at 32-33.

Amended margins found by Commerce on remand may warrant a remand to the Commission in a related appeal if the amended margins "may be determinative" and have been finalized i.e., reviewed by this Court or the U.S. Court of Appeals for the Federal Circuit. See Usinor Industeel, S.A. v. United States, 27 CIT 238, 238-40 (2003) (citing Borlem S.A.-Empreedimentos Industrias v. United States, 913 F.2d 933, 939 (Fed. Cir. 1990)). The status of the Commerce Appeal is far from being final. Thus, the Court agrees with Defendant that a stay of this action pending the Commerce Appeal is improper. The Commission properly and reasonably considered the dumping margin as it is directed by the statute. Should the Court issue a remand in the Commerce Appeal, and Commerce determines Ningbo Dafa's dumping margin to be de minimis, the appropriate relief is for the Plaintiffs to seek a changed circumstances review once the amended margin becomes final. See Usinor, 27 CIT at 239.

**CONCLUSION**

In accordance with the foregoing, the Court affirms the ITC's <u>Final Determination</u>.  Plaintiffs' motion for judgment upon the agency record is denied.


                    /s/ Nicholas Tsoucalas

                    **NICHOLAS TSOUCALAS**
                    **SENIOR JUDGE**


Dated:    August 20, 2008
           New York, New York