# United States Court of Appeals for the Federal Circuit

---

**ESSAR STEEL, LIMITED,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellee.*

---

2013-1416

---

Appeal from the United States Court of International Trade in No. 09-CV-0197, Senior Judge Judith M. Barzilay.

---

Decided: June 12, 2014

---

DANIEL MORRIS, Dentons US LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was MARK P. LUNN.

DAVID D'ALESSANDRIS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-

appellee United States. With him on the brief were
STUART F. DELERY, Assistant Attorney General, JEANNE
E. DAVIDSON, Director, and PATRICIA M. MCCARTHY,
Assistant Director. Of counsel on the brief was
NATHANIEL HALVORSON, Attorney, International Trade,
Office of the Chief Counsel for Trade Enforcement &
Compliance, United States Department of Commerce, of
Washington, DC.

NATHANIEL B. BOLIN, Skadden, Arps, Slate, Meagher
& Flom LLP, of Washington, DC, argued for defendant-
appellee United States Steel Corporation. With him on
the brief were ROBERT E. LIGHTHIZER and JEFFREY D.
GERRISH. Of counsel were JAMES C. HECHT, of Washing-
ton, DC, and STEPHEN J. NARKIN, of Palo Alto, California.

———————————

Before NEWMAN, LOURIE, and TARANTO, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Essar Steel Ltd. ("Essar") appeals from the decision of
the United States Court of International Trade (the
"Trade Court") affirming the United States Department of
Commerce's ("Commerce") corroboration of the adverse
facts available ("AFA") rate from the fifth administrative
review of the countervailing duty order covering certain
hot-rolled carbon steel flat products from India. *See Essar
Steel Ltd. v. United States*, 908 F. Supp. 2d 1306 (Ct. Int'l
Trade 2013). Because we agree with the Trade Court that
Commerce corroborated the AFA rate to the extent practi-
cable, we affirm.

## BACKGROUND

Essar is an Indian steel manufacturer with a facility
in the state of Chhattisgarh, India that imports hot-rolled
carbon steel flat products into the United States. In 2008,
Commerce initiated an investigation to assess whether
Essar received countervailable subsidies for its iron ore

products in India for the period of review from January 1, 2007 through December 31, 2007. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 73 Fed. Reg. 4829 (Jan. 28, 2008).

Commerce investigated Essar's receipt of benefits from nine separate subsidies provided under the Chhattisgarh Industrial Program ("CIP") administered by the state government of Chhattisgarh. *Essar*, 908 F. Supp. 2d at 1310–11. In response to Commerce's requests for information on its use of and benefit from the CIP subsidies, Essar repeatedly denied receiving any CIP subsidies based on a claim that Essar did not have any manufacturing facilities in Chhattisgarh. *Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1275 (Fed. Cir. 2012). Commerce found, however, that Essar's claims were contradicted by other information that Essar itself had placed on the record. *Id.* at 1274–79. During the fifth administrative review, the government of India and the state government of Chhattisgarh also failed to respond to Commerce's requests for information on the CIP subsidies. *Essar*, 908 F. Supp. 2d at 1312.

Commerce therefore applied adverse facts in its May 2009 final results and concluded that Essar did benefit from the CIP. *Essar*, 678 F.3d at 1271. Essar appealed Commerce's final results to the Trade Court, and after numerous proceedings before the court and a remand back to Commerce, the United States government and United States Steel Corporation ("U.S. Steel") appealed Essar's use of and benefit from the CIP subsidies. *Id.* at 1271–72. We upheld Commerce's decision to apply AFA with respect to Essar's use of and benefit from the CIP subsidies, noting "Essar's dishonest denials of a facility in Chhattisgarh." *Id.* at 1274–79. Essar then "contacted the [Trade Court] for guidance" with regard to corroboration of the AFA rate, which was an issue that was previously raised before the Trade Court but never resolved. *Essar*

*Steel Ltd. v. United States*, 880 F. Supp. 2d 1327, 1328–29 (Ct. Int'l Trade 2012). The Trade Court then remanded the case to Commerce with instructions to explain how it corroborated the AFA rate assigned to Essar for its participation in the CIP or why corroboration was not practicable. *Id.* at 1332.

Commerce filed its remand results explaining how it corroborated, to the extent practicable, the AFA rate assigned to Essar given that Essar, the state government of Chhattisgarh, and the government of India failed to cooperate during the fifth administrative review. *Essar*, 908 F. Supp. 2d at 1309. Commerce explained that it applied a hierarchical methodology in selecting an AFA rate. Commerce first "sought to apply, where available, the highest, above *de minimis* [AFA] rate calculated for the identical program from any segment of the proceeding." J.A. 114. Then, absent an above *de minimis* subsidy rate calculated for an identical program, Commerce sought an AFA rate "for a similar program." *Id.*

Commerce then explained that there was no independent information on the record regarding company-specific benefits under the CIP and that it therefore selected an alternate rate by following its practice of identifying subsidy rates from "similar" programs. *Essar*, 908 F. Supp. 2d at 1310–11. Commerce originally identified nine CIP programs as countervailable subsidies divided into three categories: grants, indirect tax benefits, and the provision of land at less than adequate remuneration. *Id.* Commerce calculated Essar's AFA rate by aggregating nine calculated subsidy programs deemed similar to the nine subprograms identified under the CIP using information provided by Essar and other Indian hot-rolled steel producers in other investigations. *Id.*

For the four subprograms identified as providing indirect tax benefits, Commerce assigned a net subsidy rate of 3.09% *ad valorem*, which had previously been calculated

for Essar under the Indian state of Gujarat tax incentives program during the second administrative review of the underlying countervailing duty investigation of hot-rolled carbon steel flat products from India. *Id.* On remand, Commerce explained that the Gujarat tax incentives program was an indirect tax program that was similar to the CIP tax program because it reflected the government of India's behavior in implementing an indirect tax program. *Id.* at 1311.

For the four subprograms identified as providing benefits in the form of a grant, Commerce assigned a net subsidy rate of 6.06% *ad valorem*, which was the subsidy rate calculated for the Steel Authority of India, Ltd. ("Steel Authority") under a grant program also identified during the underlying countervailing duty investigation. *Id.* On remand, Commerce explained that the subsidy rate calculated for the Steel Authority reflected the government of India's behavior in implementing a grant program. *Id.*

For the single subprogram identified as providing land for less than adequate remuneration, Commerce assigned a net subsidy rate of 18.08% *ad valorem*, which was the subsidy rate calculated for a program involving the captive mining of iron ore from the fourth administrative review of the underlying countervailing duty investigation. *Id.* On remand, Commerce explained that the captive mining program was similar to the CIP program, and the captive mining program reflected the government of India's behavior in implementing a program for providing a good for less than adequate remuneration. *Id.* The sum of the combined subsidy rates was 54.68%, which was the AFA rate Commerce had assigned to Essar. *Id.*

Commerce reported its remand results to the Trade Court, and Essar argued that although Commerce explained the methodology it used to determine the assigned AFA rate, Commerce failed to corroborate that

rate. *Id.* Essar also argued, *inter alia*, that Commerce (1) failed to consider whether Essar could have simultaneously benefited from all of the CIP programs at issue; (2) improperly applied the subsidy rate to the entire value of the finished merchandise; (3) failed to consider that Essar was found to benefit from two programs that purportedly had mutually exclusive eligibility criteria; and (4) failed to consider the purported maximum benefits for certain subsidy programs. *Id.*

The Trade Court found that Commerce had corroborated Essar's AFA rate to the extent practicable under 19 U.S.C. § 1677e(c) by utilizing calculated benefits from similar subsidy programs identified in the underlying countervailing duty investigation of hot-rolled carbon steel flat products from India. *Id.* at 1313. The court found that Essar, the only respondent, failed to cooperate in the administrative review in which it had the opportunity to provide company-specific information concerning the extent to which it had received benefits under the CIP. *Id.* at 1312. In addition, the court noted that the "Indian government" also failed to cooperate with Commerce's request for information about the CIP. *Id.* As a result, because Commerce did not calculate countervailing duty rates in a prior proceeding, the Trade Court found that Commerce had limited data available about the CIP and thus corroborated Essar's AFA rate to the extent practicable. *Id.* The Trade Court also found that Essar had not presented its additional arguments to Commerce on remand, and therefore held that those arguments were waived. *Id.*

Essar timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

I

We review decisions of the Court of International Trade without deference, applying the same substantial evidence standard of review that the Trade Court itself applies in reviewing Commerce's determinations. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998); *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1559 n.10 (Fed. Cir. 1984).

Section 1677e covers determinations of a countervailing duty on the basis of facts available. *See* 19 U.S.C. § 1677e. The relevant code provision relating to selecting secondary information for calculating an adverse inference provides as follows:

(b) Adverse inferences

If the administering authority or the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle, may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available. Such adverse inference may include reliance on information derived from–

(1) the petition,

(2) a final determination in the investigation under this subtitle,

(3) *any previous review under section 1675 of this title* or determination under section 1675b of this title, or

(4) any other information placed on the record.

19 U.S.C. § 1677e(b) (emphasis added). The statute further provides for corroboration of that secondary information:

(c) Corroboration of secondary information

When the administering authority or the Commission relies on secondary information rather than on information obtained in the course of an investigation or review, the administering authority or the Commission, as the case may be, shall, *to the extent practicable*, corroborate that information from independent sources that are reasonably at their disposal.

*Id.* § 1677e(c) (emphasis added).

Essar argues that Commerce failed to corroborate the secondary information it used in calculating the AFA rate. Essar also argues that the Trade Court erred in ruling that Commerce's obligation to corroborate secondary information was obviated as a result of this court's acknowledgement of Essar's "dishonest denials" in the prior appeal. The United States and U.S. Steel respond that Commerce fully corroborated the AFA rate to the extent practicable, and, due to the failure of Essar, the government of India, and the state of Chhattisgarh to respond to Commerce's request for information, there was no independent information on the record regarding company-specific benefits under the CIP for Commerce to use to corroborate.

We agree with the United States and U.S. Steel that the Trade Court did not err in finding that Commerce's corroboration of the AFA rate was supported by substantial evidence. Commerce's ability to corroborate the secondary information under § 1677e(c) was limited by Essar's lack of cooperation, and Commerce used a reasonably accurate estimate of the subsidy rates in accordance

with § 1677e(b) that were calculated for Essar or other producers of hot-rolled carbon steel who were cooperating with Commerce in prior segments of the underlying investigation.

Under § 1677e(b), if Commerce "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information . . . . [Commerce] may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." *Id.* § 1677e(b). That "adverse inference may include reliance on information derived from . . . any previous review under section 1675," which covers administrative review of determinations. *Id.* § 1677e(b)(3). The sources used to calculate an AFA rate should "be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance." *F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

Commerce, applying its hierarchical methodology for selecting an AFA rate for an uncooperative respondent, calculated the 54.68% AFA rate based on actual and verified subsidy data provided by Essar and other Indian hot-rolled steel producers for similar subsidy programs. Those similar programs included the Gujarat tax incentive program involved in the second administrative review, the grant program involving the Steel Authority previously identified during the underlying investigation, and the provision of land for less than adequate remuneration involving the captive ore mining program involved in the fourth administrative review. Accordingly, the rates from those similar programs were calculated during a "previous review under section 1675," namely, the underlying countervailing duty investigation of hot-rolled carbon steel flat products from India. 19 U.S.C. § 1677e(b)(3). Commerce's calculation of an AFA rate was

thus a reasonably accurate estimate of Essar's actual rate under § 1677e(b).

Section 1677e(c) requires that Commerce "shall, *to the extent practicable*, corroborate that information from independent sources that are reasonably at their disposal." 19 U.S.C. § 1677e(c) (emphasis added). Essar, the state government of Chhattisgarh, and the government of India failed to cooperate with Commerce and to provide company-specific benefits under the CIP, and the record lacked other independent information regarding company-specific benefits pursuant to the CIP. Because there were no other independent sources of data on company-specific benefits, Commerce was limited in its ability to corroborate the information used to calculate the AFA rate. Nonetheless, in light of the failure of Essar to cooperate and the reasonably accurate nature of the secondary information that Commerce used under § 1677e(b), Commerce satisfied the requirement of corroborating the 54.68% AFA rate "to the extent practicable." *Id.*

There is also no indication that the Trade Court found that Commerce's obligation to corroborate the secondary information was obviated as a result of our acknowledgement of Essar's "dishonest denials" in the first appeal. Thus, the Trade Court did not err in finding that Commerce's corroboration of the AFA was supported by substantial evidence.

## II

Essar argues that the Trade Court abused its discretion in refusing to hear additional arguments including that Commerce (1) failed to consider whether Essar could have simultaneously benefited from all nine CIP programs to achieve the aggregate AFA rate; (2) improperly applied the CIP subsidy rate to the finished goods when the subsidy would have benefited only an upstream component; and (3) failed to consider that certain CIP programs had maximum benefits. The United States and

U.S. Steel respond that Essar failed to exhaust its administrative remedies regarding several new arguments on corroboration that Essar never raised to Commerce.

The law provides that the Trade Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The doctrine of exhaustion provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Sandvik Steel Co. v. United States,* 164 F.3d 596, 599 (Fed. Cir. 1998). "Certain exceptions to the exhaustion requirement apply, such as where exhaustion would be a 'useless formality,' or where the party 'had no opportunity' to raise the issue before the agency." *Yangzhou Bestpak Gifts & Crafts Co., Ltd. v. United States*, 716 F.3d 1370, 1381 (Fed. Cir. 2013) (quoting *Jiaxing Brother Fastner Co. v. United States*, 751 F. Supp. 2d 1345, 1355–66 (Ct. Int'l Trade 2010). We review the Trade Court's application of exhaustion of remedies for abuse of discretion. *Corus Staal BV v. United States*, 502 F.3d 1370, 1381 (Fed. Cir. 2007).

We agree with the United States and U.S. Steel that the Trade Court did not abuse its discretion in holding that Essar failed to exhaust its administrative remedies regarding the new arguments on corroboration. The record shows that Essar failed to raise any of the new arguments before Commerce, and it cannot therefore raise those arguments now on appeal. *Sandvik,* 164 F.3d at 599. Those arguments were new when they were presented to the Trade Court, and there is no indication that exhaustion would have been a useless formality or that Essar lacked an opportunity to raise the argument before Commerce. *Yangzhou Bestpak*, 716 F.3d at 1381. Accordingly, the Trade Court did not abuse its discretion in finding that Essar failed to exhaust its administrative remedies.

CONCLUSION

For the foregoing reasons, we conclude that the Court of International Trade did not err in holding that Commerce corroborated the AFA rate from the fifth administrative review of the countervailing duty order covering certain hot-rolled carbon steel flat products from India to the extent practicable.  We also conclude that the Trade Court did not abuse its discretion in finding that Essar failed to exhaust its administrative remedies.  Accordingly, the judgment of the Trade Court is affirmed.

**AFFIRMED**