# United States Court of Appeals for the Federal Circuit

---

**JBF RAK LLC,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

**MITSUBISHI POLYESTER FILM, INC., DUPONT TEIJIN FILMS, SKC, INC.,**
*Defendants*

---

2014-1774

---

Appeal from the United States Court of International Trade in No. 13-cv-00211, Senior Judge Judith M. Barzilay.

---

Decided: June 24, 2015

---

JACK MLAWSKI, Galvin & Mlawski, New York, NY, argued for plaintiff-appellant.

MELISSA M. DEVINE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOYCE R. BRANDA, JEANNE E. DAVIDSON, PATRICIA M. MCCARTHY; DEVIN S. SIKES, Office of the

Chief Counsel for Import Administration, United States Department of Commerce, Washington, DC.

———————————

Before DYK, WALLACH, and HUGHES, *Circuit Judges.*

WALLACH, *Circuit Judge.*

Appellant JBF RAK, LLC ("JBF RAK") appeals the United States Court of International Trade's ("CIT") decision sustaining the U.S. Department of Commerce's ("Commerce") final results of the administrative review covering polyethylene terephthalate film ("PET Film") from the United Arab Emirates ("UAE") for the period of review from November 1, 2010 through October 31, 2011. *See Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates*, 78 Fed. Reg. 29,700 (Dep't of Commerce May 21, 2013) (final results of anti-dumping duty administrative review; 2010–2011) ("Final Results"). For the reasons set forth below, we affirm.

BACKGROUND

Commerce issued an antidumping duty order covering PET Film from UAE in November 2008. *See Polyethylene Terephthalate Film, Sheet, and Strip from Brazil, the People's Republic of China, and the United Arab Emirates*, 73 Fed. Reg. 66,595 (Dep't of Commerce Nov. 10, 2008) (antidumping duty orders and amended final determination of sales at less than fair value for the United Arab Emirates). JBF RAK is a manufacturer and exporter of PET Film from UAE, and pursuant to 19 U.S.C. § 1675(a)(1) (2006), on November 30, 2011, it requested that Commerce conduct an administrative review of the antidumping duty order for this period of review. Commerce initiated its review in December 2011. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 76 Fed. Reg. 82,268 (Dep't of Commerce Dec. 30, 2011) (initiation). However, before Commerce published

its preliminary results, Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics America, Inc. (collectively "domestic producers") filed an allegation of targeted dumping[1] against JBF RAK on November 16, 2012. In that petition, the domestic producers argued Commerce should not use the average-to-average comparison method typically used in administrative reviews[2] because that method would not account for the price differences of JBF RAK's merchandise, and should instead use an average-to-transaction method of comparison.

On December 7, 2012, Commerce published its preliminary results and assigned JBF RAK a dumping margin of 5.31% using its average-to-average comparison methodology. *See Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates*, 77 Fed. Reg.

---

[1]    Targeted dumping occurs in "situations where comparable merchandise 'differ[s] significantly among purchasers, regions, or periods of time.'" *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1359 (Fed. Cir. 2010) (quoting 19 U.S.C. § 1677f-1(d)(1)(B)).

[2]    In 2012, Commerce revised its methodology in administrative reviews from using average-to-transaction comparisons as its general practice in administrative reviews to average-to-average comparisons as the default method for calculating weighted average dumping margins. *Union Steel v. United States*, 713 F.3d 1101, 1106 n.5 (Fed. Circ. 2013) (citing *Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings; Final Modification*, 77 Fed. Reg. 8,101, 8,101 (Feb. 14, 2012) (codified at 19 C.F.R. pt. 351) (Commerce "will calculate weighted-average margins of dumping and antidumping duty assessment rates in a manner which provides offsets for non-dumped comparisons while using monthly average-to-average . . . comparisons in reviews.")).

73,010, 73,010–11 & n.5 (Dep't of Commerce Dec. 7, 2012) (preliminary results of antidumping duty administrative review; 2010–2011) ("Preliminary Results").  In its accompanying Preliminary Decision Memorandum, Commerce indicated it "did not have sufficient time to fully analyze [the targeted dumping issue] for purposes of these preliminary results" and that it would "address [the domestic producers'] targeted dumping allegation at a later date." *Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates* A-520-803 (Decision Memorandum for the Preliminary Results of Antidumping Duty Administrative Review) (Dep't of Commerce Nov. 30, 2012) (J.A. 123–31).

On March 8, 2013, Commerce published a post-preliminary determination addressing the domestic producers' allegation of targeted dumping.  *See Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates*, A-520-803 (Post-Preliminary Results Analysis Memo for JBF RAK LLC) (Dep't of Commerce Mar. 8, 2013) (J.A. 164–65) ("Post-Preliminary Determination").  Using an average-to-transaction comparison methodology, Commerce determined JBF RAK had engaged in targeted dumping and assigned it a revised dumping margin of 9.80%.  After interested parties were invited to comment on Commerce's targeted dumping analysis, Commerce continued to apply the average-to-transaction comparison methodology and carried on the dumping margin of 9.80%.  *See* Final Results, 78 Fed. Reg. at 29,700–01.

JBF RAK appealed to the CIT, and in July 2014, that court denied JBF RAK's motion for judgment on the agency record.  *JBF RAK LLC v. United States*, 991 F. Supp. 2d 1343 (Ct. Int'l Trade 2014).  Before the CIT, JBF RAK challenged, inter alia, Commerce's targeted dumping analysis, and disputed Commerce's authority to apply the average-to-transaction comparison method in administrative reviews.  The CIT held that Commerce provided a

legitimate explanation for applying the average-to-transaction method in the review, and sustained the Final Results.

JBF RAK appeals and this court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(5) (2012).

DISCUSSION

I. Standard of Review and Legal Framework

The court "review[s] a decision of the [CIT] evaluating an antidumping determination by Commerce by reapplying the statutory standard of review that the [CIT] applied in reviewing the administrative record." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1335 (Fed. Cir. 2002). Thus, this court sustains "any determination, finding, or conclusion" made by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (2012).

The antidumping duty statute provides for the application of remedial duties to foreign goods sold, or likely to be sold, in the United States at less than fair value. *Id.* § 1673(1). A dumping margin is the amount by which "'normal value' (the price a producer charges in its home market) exceeds the 'export price' (the price of the product in the United States) or 'constructed export price.'" *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010) (quoting 19 U.S.C. § 1677(35)(A)). Commerce calculates a "dumping margin" for each entry of subject merchandise that is under review. *See* 19 U.S.C. § 1675(a)(2)(A)(ii) (2006).

This court employs the two-part test articulated in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) in reviewing Commerce's interpretation of the statute. We first look to "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. "[I]f the statute is silent or ambiguous

with respect to the specific issue," we assess whether Commerce's "answer is based on a permissible construction of the statute." *Id.* at 843.

## II. Analysis

On appeal, JBF RAK claims Commerce: (1) unlawfully applied its targeted dumping methodology in the context of an administrative review; (2) improperly considered petitioners' allegation of targeted dumping; (3) unlawfully issued the Post-Preliminary Determination; and (4) failed to consider certain facts about JBF RAK's pricing practices in its targeted dumping determination. We address these arguments seriatim.

### A. Commerce's Targeted Dumping Analysis Is Not Contrary to Law

JBF RAK's primary argument on appeal is that "Commerce improperly considered the targeting allegation by relying on the statutory provision for investigations." Appellant's Br. 7. Specifically, JBF RAK asserts that 19 U.S.C. § 1677f-1(d)(1)(B)[3] provides an "exception"

---

[3]    In relevant part, 19 U.S.C. § 1677f-1(d)(1) and (2) state:

(d) Determination of less than fair value

　　　(1) Investigations
　　　(A) In general

　　　In an investigation under part II of this subtitle, [Commerce] shall determine whether the subject merchandise is being sold in the United States at less than fair value—(i) by comparing the weighted average of the normal values to the weighted average of the export prices (and constructed export prices) for comparable merchandise, or (ii) by comparing the normal values of individual transactions to the export prices (or con-

to use an average-to-transaction comparison only in investigations, and it cannot be applied in administrative reviews. *Id.* at 6. That is, to JBF RAK, because Congress created an explicit exception in the statute for investigations but did not include one in the section relating to administrative reviews, Commerce is not able to use an "average-to-transaction" comparison in administrative reviews. The government counters that the CIT correctly

structed export prices) of individual transactions for comparable merchandise.

(B) Exception

[Commerce] may determine whether the subject merchandise is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise, if—(i) there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time, and (ii) [Commerce] authority explains why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii).

(2) Reviews

In a review under section 1675 of this title, when comparing export prices (or constructed export prices) of individual transactions to the weighted average price of sales of the foreign like product, [Commerce] shall limit its averaging of prices to a period not exceeding the calendar month that corresponds most closely to the calendar month of the individual export sale.

19 U.S.C. § 1677f-1(d).

held that Commerce's interpretation was reasonable and entitled to *Chevron* deference.

Under *Chevron* step one, this court first looks to "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. JBF RAK contends "the statute is not silent. The provision with respect to investigations creates an 'exception' and the provisions immediately after applicable to reviews, do not, and, thus, refute any asserted ambiguity or silence." Appellant's Br. 8. Appellant's *expressio unius est exclusio alterius* line of reasoning fails. Section 1677f-1(d)(2) of Title 19 provides for calculating the dumping margin in administrative reviews; it does not, however, provide the specific methodology to make the comparison between normal value and the actual or constructed export price. *See* 19 U.S.C. § 1677f-1(d)(2). Thus, because Congress did not speak to the precise question at issue, we turn to *Chevron* step two: whether Commerce's interpretation "is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

When a statute fails to make clear "any Congressionally mandated procedure or methodology for assessment of the statutory tests," Commerce "may perform its duties in the way it believes most suitable." *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996). Under *Chevron*, "[i]f Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44.

Pursuant to 19 C.F.R. § 351.414(b) (2012), "[c]omparison of normal value with export price (constructed export price)," there are three methods by which value may be compared to export price or constructed

export price: (1) average-to-average: "a comparison of the weighted average of the normal values with the weighted average of the export prices (and constructed export prices) for comparable merchandise;" (2) transaction-to-transaction: "a comparison of the normal values of individual transactions with the export prices (or constructed export prices) of individual transactions for comparable merchandise;" and (3) average-to-transaction: "a comparison of the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise." 19 C.F.R. § 351.414(b)(1)–(3). The regulation also states that in choosing the method of review "*in an investigation* or review, [Commerce] will use the average-to-average method unless [it] determines another method is appropriate in a particular case." *Id.* at § 351.414(c)(1) (emphasis added).

Here, Commerce "exercised its gap-filling discretion by applying a comparison methodology[, i.e. the average-to-transaction comparison method,] in reviews that parallels the methodology used in investigations." *JBF RAK*, 991 F. Supp. 2d at 1347. JBF RAK points to no authority that contradicts this practice. Thus, contrary to JBF RAK's claims, Commerce's decision to apply its average-to-transaction comparison methodology in the context of an administrative review is reasonable. Because Congress did not provide for a direct methodology, Commerce properly "fill[ed] th[at] gap." *Chevron*, 467 U.S. at 843.

JBF RAK also contends the Statement of Administrative Action ("SAA") accompanying the Uruguay Round Agreements Act "do[es] not provide the authority to apply the explicit exception for investigations in Section 1677f-1(d)(1)(B) to administrative reviews." Appellant's Br. 4. JBF RAK relies on Article 2.4.2 of the SAA, which states, "[i]n a departure from current U.S. law, Article 2.4.2 provides that in investigations (*not reviews*), national authorities normally will establish dumping margins by

comparing either: a weighted-average of normal values to a weighted-average of export prices of comparable merchandise; or normal value and export price on a transaction-to-transaction basis." Appellant's Br. 12 (quoting SAA, H.R. No. 103-316, vol. 1, at 810 (1994), *reprinted in* 1994 U.S.C.C.A.N 4040, 4153 (emphasis added). According to JBF RAK, "[t]he parenthetical language in the SAA '(not reviews)' clearly and unambiguously establishes Congress' understanding of the obligation under the agreement that the targeting allegation is to be considered and, if it exists, an alternative comparison method is applied in investigations and 'not reviews.'" *Id.* However, this passage fails to address what methods Commerce may use to make comparisons between normal value and export price or constructed export price in *administrative reviews*; it addresses investigations only. Moreover, as the government notes, "the SAA does not limit the proceedings in which Commerce may consider an alternate comparison method when an average-to-average or transaction-to-transaction method cannot account for a pattern of United States prices that differ significantly among purchasers, regions, or time periods." Appellee's Br. 20 (citing SAA at 842–43).

Accordingly, the CIT correctly concluded that "[t]he fact that the statute is silent with regard to administrative reviews does not preclude Commerce from filling gaps in the statute to properly calculate and assign antidumping duties." *JBF RAK*, 991 F. Supp. 2d at 1348.

B. The Targeted Dumping Allegation Was Timely Filed Pursuant to 19 C.F.R. § 351.301[4]

---

[4]    Citations to 19 C.F.R. in this opinion refer to the 2012 version, prior to the revisions that are reflected in the 2013 version, unless otherwise noted.

JBF RAK next argues "that [the domestic producers'] untimely allegation of targeted dumping was improperly considered in violation of the time requirements of 19 C.F.R. § 351.301." Appellant's Br. 13. JBF RAK first contends the domestic producers' targeted dumping allegation was in violation of § 351.301(c), which provides that rebuttal factual information must be filed within ten days of service of factual information submitted by any other interested party. *See* 19 C.F.R. § 351.301(c)(1).

Commerce did not categorize the targeted dumping allegation as "rebuttal factual information," as covered by § 351.301(c)(1). J.A. 194 ("While [19 C.F.R. §] 351.301(c)(1) pertains to rebuttal factual information, [the domestic producers'] targeted dumping allegation cannot reasonably be characterized as rebuttal factual information, as JBF [RAK] claims."). Commerce explained that though the "[domestic producers] used the information on the record of this review for purposes of advocating that [Commerce] consider using a different method to compare normal value and export price (or constructed export price)," that fact "does not transform [the domestic producers'] allegation into the submission of facts, for the facts that served as the basis for [the domestic producers'] claim already were on the record." J.A. 194–95.

JBF RAK nevertheless argues that "[a]ssuming that the rebuttal facts must be 'new,' although there is no such requirement in the regulation, the allegation herein certainly adduced facts that were not evident from the information on record. . . . Commerce made the questionable assertion that reliance on record information cannot be 'new.'" Appellant's Br. 16. However, JBF RAK points to no evidence whatsoever supporting this assertion and we accordingly afford it no weight. Because the targeted dumping allegation did not present new "facts" for Commerce to consider, Commerce did not err in finding the domestic producers' allegation was timely.

Additionally, 19 C.F.R. § 351.301 differentiates between "factual information" under § 351.301(c), and "certain allegations" under § 351.301(d). Subsection (d) detailed the timeline for submission of targeted dumping allegations in investigations under the now-withdrawn § 351.301(d)(5) (2007). As Commerce found, the domestic producers' targeted dumping allegation was akin to submissions under subsection (d). J.A. 195 ("Because the nature of the filings listed in [19 C.F.R. §] 351.301(d) closely resemble [domestic producers'] targeted dumping allegation, (and in fact the now-withdrawn targeted dumping allegation was listed under that very provision), it stands to reason that [Commerce] properly considered [domestic producers'] submission as an allegation and not rebuttal factual information." (footnote omitted)). Accordingly, domestic producers' targeted dumping allegations were not included as part of the submissions covered by subsection (c), but rather, were more closely related to those of subsection (d).

C. The CIT Did Not Abuse Its Discretion When It Found JBF RAK Failed to Exhaust Its Administrative Remedies

JBF RAK also contends Commerce erred in failing to find the now-withdrawn 19 C.F.R. § 351.301(d)(5) (2007) barred the domestic producers' allegations of targeted dumping. JBF RAK argues the CIT abused its discretion when it held JBF RAK failed to exhaust its administrative remedies, thereby "depriv[ing] Commerce of the opportunity to 'apply its expertise, rectify administrative mistakes, and compile a record adequate for judicial review—advancing the twin purposes of protecting administrative agency authority and promoting judicial efficiency.'" *JBF RAK*, 991 F. Supp. 2d at 1350 (citation omitted).

Relatedly, JBF RAK argues the allegation was untimely under 19 C.F.R. § 351.301(b)(2) because factual information is due "140 days after the last day of the

anniversary month" in the final results of an administrative review, and the domestic producers submitted their targeted dumping allegation after that date.

JBF RAK did not cite to the time limits in 19 C.F.R. § 351.301(d)(5) or (b)(2) after either the Post-Preliminary Determination or in its administrative briefing to argue that these regulations precluded Commerce from considering the targeted dumping allegation. *See* J.A. 140–58, 171–87. Under 28 U.S.C. § 2637(d), the CIT "shall, where appropriate, require the exhaustion of administrative remedies" in civil actions arising from Commerce's antidumping duty determinations. The CIT "takes a 'strict view' of the requirement that parties exhaust their administrative remedies before [Commerce] in trade cases." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). Because JBF RAK failed to raise these issues before Commerce, the CIT correctly found it had not exhausted its administrative remedies. *See* 19 C.F.R. § 351.309(c)(2) ("The case brief must present all arguments that continue in the submitter's view to be relevant to [Commerce's] final determination.").

There are limited exceptions to the exhaustion doctrine. *Essar Steel, Ltd. v. United States*, 753 F.3d 1368, 1374 (Fed. Cir. 2014). JBF RAK argues a CIT case decided after the Final Results, *Gold East Paper (Jiangsu) Co., v. United States*, 918 F. Supp. 2d 1317 (Ct. Int'l Trade 2013), was an intervening legal authority that excused its failure to exhaust on the theory that, until *Gold East Paper,* JBF RAK thought that § 351.301(d)(5) of the regulations had been effectively withdrawn. The CIT addressed this argument, explaining it "presents an interesting academic question but it is one the court need not answer." *JBF RAK*, 991 F. Supp. 2d at 1350. The CIT held that, even if the regulation applied, "the government may waive its procedural deadlines under general principles of administrative law." *Id.* To overcome these principles, JBF RAK was required to show "it was

substantially prejudiced by Commerce's supposed violation of its regulatory deadlines." *Id.* On appeal, JBF RAK contends "clearly JBF was substantially prejudiced by the issuance of a second preliminary determination not authorized under the statute," Appellant's Br. 14, however, JBF RAK provides no further evidence or argument, and we therefore find this contention unpersuasive.

In any event, in *Gold East Paper*, the CIT found that Commerce improperly withdrew 19 C.F.R. § 351.414(f)(2) (2007), not § 351.301(d)(5) (2007), the regulation at issue in the instant case. *See* 918 F. Supp. 2d 1325–28. JBF RAK argues that it did not know it could challenge the withdrawal of § 351.301(d)(5) as inconsistent with the Administrative Procedure Act until *Gold East Paper*. Appellant's Br. 22. However, "a litigant must diligently protect its rights in order to be entitled to relief." *Mukand Int'l, Ltd. v. United States*, 502 F.3d 1366, 1370 (Fed. Cir. 2007). JBF RAK did not raise this issue before Commerce and we will not address it here.

## D. Commerce Did Not Err in Issuing the Post-Preliminary Results

JBF RAK next argues Commerce acted ultra vires when it issued the Post-Preliminary Determination because 19 U.S.C. § 1675(a)(2)(B)(iv) and (C) provide for only preliminary and final determinations. Appellant's Br. 24. The CIT rejected the claim as "a superficial legal argument that ignores general principles of administrative law." *JBF RAK*, 991 F. Supp. 2d at 1352. This court has stated that "'[a]bsent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.'" *PSC VSMPO-Avisma Corp. v. United States,* 688 F.3d 751, 760 (Fed. Cir. 2012) (quoting *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S.

519, 543–44 (1978)). Here, Commerce issued its Post-Preliminary Determination, gave parties an opportunity to comment, "and still managed to issue the *Final Results* within the statutory time-frame." *JBF RAK*, 991 F. Supp. 2d at 1353. Accordingly, the CIT correctly found that JBF RAK was not prejudiced by Commerce's decision to issue a Post-Preliminary Determination.

### E. Commerce's Interpretation of 19 U.S.C. § 1677f-1(d)(1)(B)(i) Is Reasonable

JBF RAK argues that "Commerce must consider evidence that price patterns that meet the *Nails* Test[5] do

---

5   The *Nails* Test involves a two-step analysis:

In the first stage of the test, the "standard-deviation test," [Commerce] determine[s] the volume of the allegedly targeted group's (*i.e.*, purchaser, region or time period) sales of subject merchandise (by sales volume) that are at prices more than one standard deviation below the weighted-average price of all sales under review, targeted and non-targeted. . . . If that volume did not exceed 33 percent of the total volume of the respondent's sales of subject merchandise for the allegedly targeted group, then [Commerce does] not conduct the second stage of the *Nails* Test. If that volume exceeded 33 percent of the total volume of the respondent's sales of subject merchandise for the allegedly targeted group, on the other hand, then [Commerce] proceed[s] to the second stage of the *Nails* Test.

In the second stage, the "gap test," we examined all sales of identical merchandise (i.e., by [control number]) sold to the allegedly targeted group which passed the standard-

not constitute targeted dumping." Appellant's Br. 26 (capitalization omitted) (italics added); *see Certain Steel Nails from the People's Republic of China*, 73 Fed. Reg. 33,977 (Dep't of Commerce June 16, 2008) (final determination of sales at less than fair value and partial affirmative determination of critical circumstances); *Certain Steel Nails from the United Arab Emirates*, 73 Fed. Reg. 33,985 (Dep't Commerce June 16, 2008) (notice of final determination of sales at not less than fair value).

deviation test. From those sales, [Commerce] determined the total volume of sales for which the difference between the weighted-average price of sales for allegedly targeted group and the next higher weighted-average price of sales to the non-targeted groups exceeds the average price gap (weighted by sales volume) for the non-targeted groups. [Commerce] weight[s] each of the price gaps between the non-targeted groups by the combined sales volume associated with the pair of prices for the non-targeted groups that defined the price gap. In doing this analysis, the allegedly targeted group's sales were not included in the non-targeted groups; the allegedly targeted group's average price was compared only to the average prices for the non-targeted groups. If the volume of the sales that met this test exceeded five percent of the total sales volume of subject merchandise to the allegedly targeted group, then [Commerce] determine[s] that targeting occurred and these sales passed the *Nails* Test.

*JBF RAK*, 991 F. Supp. 2d at 1354 (citation omitted).

According to JBF RAK, "because of its sales practice[s], it could not target customers, regions or periods of time and the pricing pattern found by Commerce was the result of market conditions." *Id.* Thus, according to JBF RAK, it was "arbitrary, capricious and an abuse of discretion to refuse to consider evidence which would tend to establish that the pricing pattern was not due to targeted sales but, instead, was for a valid business purpose." *Id.* at 27. The CIT held that 19 U.S.C. § 1677f-1(d)(1)(B) defines "targeted dumping" in terms of a pattern of export prices, and that Commerce's *Nails* Test reasonably determines when such a pattern exists. *JBF RAK*, 991 F. Supp. 2d 1355.

Section 1677f-1(d)(1)(B) does not require Commerce to determine the reasons why there is a pattern of export prices for comparable merchandise that differs significantly among purchasers, regions, or time periods, nor does it mandate which comparison methods Commerce must use in administrative reviews. As a result, Commerce looks to its practices in antidumping duty investigations for guidance. Here, the CIT did not err in finding there is no intent requirement in the statute, and we agree with the CIT that requiring Commerce to determine the intent of a targeted dumping respondent "would create a tremendous burden on Commerce that is not required or suggested by the statute." *JBF RAK*, 991 F. Supp. 2d at 1355 (internal quotation marks and citation omitted).

## CONCLUSION

The court has considered JBF RAK's other arguments and finds them unpersuasive. For the reasons set forth above, the decision of the CIT is

## **AFFIRMED**